

FILED
APR 2 8 2014
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES HIS LAW, | * | CIV 13-3016-RAL |
| | * | |
| Petitioner, | * | |
| | * | |
| vs. | * | |
| | * | OPINION AND ORDER |
| | * | DENYING MOTION UNDER |
| UNITED STATES OF AMERICA, | * | 28 U.S.C. § 2255 |
| | * | |
| Respondent. | * | |

Charles His Law is serving a 96-month sentence after having pleaded guilty to a reduced charge of assault resulting in serious bodily injury under a plea agreement. United States v. His Law, 11-CR-30154-RAL, Doc. 1, Doc. 26, Doc. 47.[1] His Law now has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. His Law v. United States, 13-CV-3016-RAL, Doc. 1.[2] In his § 2255 motion, His Law asserts the following grounds: 1) the Government allegedly breached the plea agreement by not recommending a "within guideline sentence;" 2) His Law's court-appointed counsel allegedly was ineffective at the sentencing hearing and in an appeal;[3] and 3) this Court allegedly erred in how it sentenced His Law. His Law filed a lengthy memorandum in connection with his § 2255 motion making clear that he is challenging the Government's urging of the sentence at the top

---

[1]Citations to pleadings from His Law's criminal case hereafter will be "CR Doc." followed by the document number from the Case Management/Electronic Case Filing (CM/ECF) system.

[2]Citations to pleadings from this present case, 13-CV-3016-RAL, in which this Opinion and Order is being entered will be "CIV Doc." followed by the CM/ECF document number.

[3]In Ground Two, His Law refers generally to "pre-plea stages" as well, but his arguments plainly relate to alleged ineffective assistance of counsel in connection with the sentencing and appeal. CIV Doc. 1; CIV Doc. 2; CIV Doc. 5.

end of the guideline range at the sentencing hearing, his counsel's preparation for and performance at the sentencing hearing and on appeal, and this Court's rulings during the sentencing hearing. CIV Doc. 2. For the reasons explained herein, this Court denies His Law's § 2255 motion.

## I.    Facts from Underlying Criminal Case

### A.    Procedural History, Plea Agreement, and Guilty Plea

On December 14, 2011, His Law was indicted on four counts. CR Doc. 1. Count I of the Indictment alleged that His Law on November 3, 2011, unlawfully assaulted Evon Ortiz with a dangerous weapon, that being shod feet, with the intent to do bodily harm to Evon Ortiz, and that federal jurisdiction existed in that His Law is an Indian and the offense occurred in Indian country. CR Doc. 1. Count II of the Indictment alleged that His Law, on November 15, 2011, used the threat of physical force against Evon Ortiz to compel her to call law enforcement and give false information about the assault investigation, thereby tampering with a victim. CR Doc. 1. Count III of the Indictment alleged that, between November 12, 2011 and December 7, 2011, His Law threatened to kill Evon Ortiz for having cooperated in the assault investigation by federal officials, thereby committing the crime of retaliating against a victim. CR Doc. 1. Count IV of the Indictment alleged that between November 12, 2011 and December 7, 2011, His Law had taken Evon Ortiz, his intimate and dating partner, outside of Indian country by force and had assaulted her thereby committing the crime of interstate domestic violence. CR Doc. 1. His Law was arraigned on December 15, 2011, and was appointed David W. Siebrasse as his counsel under the Criminal Justice Act. CR Doc. 6.

2

His Law and Siebrasse reached a Plea Agreement with the Government, which was filed on April 12, 2012. CR Doc. 26. The terms of the Plea Agreement contained concessions by the Government favorable to His Law. Under the Plea Agreement, His Law agreed to waive Indictment and plead guilty to an Information charging one count of assault resulting in serious bodily injury. CR Doc. 26 at ¶ C. In exchange for that guilty plea, the Government would dismiss the charges in the Indictment thereby greatly reducing the maximum penalty His Law was facing if convicted on all counts of the Indictment. CR Doc. 26 at ¶¶ B, C. Under the Plea Agreement, Siebrasse secured for His Law's benefit a commitment from the Government to agree, based on the information known to it at the time, that His Law was entitled to a reduction for acceptance of responsibility in his offense level. CR Doc. 26 at ¶¶ E, F. The Government also agreed in the Plea Agreement that "it will recommend that the Court impose a sentence of imprisonment within the applicable Guideline range." CR Doc. 26 at ¶ G. As a part of the Plea Agreement, His Law waived all defenses and any right to appeal any non-jurisdictional issues. CR Doc. 26 at ¶ Q. That waiver excluded His Law's "right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or upward variance pursuant to 18 U.S.C. § 3553(a)." CR Doc. 26 at ¶ Q.

As a part of the Plea Agreement, His Law signed a Factual Basis Statement. CR Doc. 28; CR Doc. 57. In the Factual Basis Statement, His Law acknowledged the following facts to be true:

> On or about the 3rd day of November, 2011, at Fort Thompson, in Indian country, in the District of South Dakota, Charles His Law, an Indian, did unlawfully assault Evon Ortiz,

3

and said assault resulted in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).

During October and early November 2011, the Defendant, Charles His Law, and the victim of this offense, Evon Ortiz, were in a dating and intimate relationship. They were cohabitating together at 88 Jones Drive in Fort Thompson, South Dakota, on the Crow Creek Sioux Indian Reservation. During the early morning hours of November 3, 2011, the Defendant became upset with the victim and grabbed her by the hair and dragged her into the southwest bedroom of the home. Once inside the bedroom, the Defendant began to assault the victim by punching her with a closed fist to the face and upper body area multiple times. The force of these blows knocked the victim to the floor inside the closet of the bedroom. Once the victim was on the floor inside the closet, the Defendant continued to strike her on her head and body with a closed fist. The victim was eventually able to get away, ran to a neighbor for help, and law enforcement was summoned.

The victim received medical treatment in Chamberlain, South Dakota. Medical records reveal the victim suffered two black eyes, a right nasal bone fracture, probably left nasal bone fracture, buckling of the mid nasal septum related to fracture, bilateral facial, periorbial nasal and frontal soft tissue swelling and multiple bruises to her face and body. The parties stipulate and agree the victim suffered serious bodily injury as a result of this assault.

A federal search warrant was executed on the home at 88 Jones Drive, Fort Thompson, South Dakota. During the search, a red blood-like substance was observed in the southwest bedroom and closet. Samples were taken and submitted to the South Dakota Forensic Lab. Lab results indicate that the red blood-like substance was human blood and the DNA profile extracted from the blood matches that of a known sample of the victim, Evon Ortiz.

That His Law's date of birth is April 21, 1983, and the Defendant was 28 years of age at the time of the offense.

That the Defendant is an "Indian" under the provisions of 18 U.S.C. § 1153 in that he is an enrolled member of the Rosebud Sioux Tribe, enrollment number RSU-26246, and is 15/32 degree Indian by blood, and that the offense occurred in Ft. Thompson, in Buffalo County, South Dakota, in Indian country, which is within the exterior boundaries of the Crow Creek Indian

4

Reservation. This location is "Indian country" within the provisions of 18 U.S.C. §§ 1151 and 1153.

CR Doc. 28.

His Law appeared before this Court on April 17, 2012, at a change of plea hearing. Doc. 57. His Law was placed under oath and acknowledged his understanding that he had to answer questions truthfully. CR Doc. 57 at 2-3. Toward the beginning of the change of plea hearing, this Court had the following dialogue with His Law:

| | |
|---|---|
| THE COURT: | Have you had an ample opportunity to talk with your attorney Mr. Siebrasse about your case and about what you should do here today? |
| THE DEFENDANT [His Law]: | Yeah. |
| THE COURT: | Are you fully satisfied with the counsel, advice, and representation provided to you by Mr. Siebrasse? |
| THE DEFENDANT [His Law]: | Yeah. |

CR Doc. 57 at 4. The change of plea colloquy demonstrated that His Law was competent and was voluntarily and knowingly changing his plea with an understanding of his rights. CR Doc. 57. Among other things, His Law acknowledged signing the Factual Basis Statement, carefully reading and understanding the Factual Basis Statement, and going over the Factual Basis Statement with his attorney before signing it. CR Doc. 57 at 14. His Law acknowledged the accuracy of that statement as follows:

| | |
|---|---|
| THE COURT: | Is the factual basis statement accurate in what it sets forth? |
| THE DEFENDANT [His Law]: | Yeah. |

CR Doc. 57 at 14. Before taking His Law's change of plea, this Court again probed whether His Law had any complaint about his CJA counsel:

> THE COURT:       Have you had enough time to talk with
>                  Mr. Siebrasse about your case and about
>                  what you should do here today?
> THE DEFENDANT [His Law]:      Yeah.
> THE COURT:       Are you happy with the work that Mr.
>                  Siebrasse has done on your behalf?
> THE DEFENDANT [His Law]:      Yeah.

CR Doc. 57 at 15. His Law then changed his plea to guilty to the charge in the Information of

assault resulting in serious bodily injury. CR Doc. 57 at 16. This Court ordered a Presentence

Investigation Report (PSR) to be done and set a sentencing hearing.

**B.     Presentence Investigation Report and Initial Sentencing Hearing**

The PSR on His Law contained a calculation of both the offense level and the criminal

history category into which His Law fit under the United States Sentencing Commission

Guideline Manual.  With His Law having plead guilty to assault resulting in serious bodily

injury, the base offense level was drawn from U.S.S.G. § 2A2.2. Because Evon Ortiz, His Law's

victim, had suffered nasal fractures, buckling of the mid-nasal septum related to the nasal

fracture, facial swelling, and multiple bruises to her face and body as a result of His Law's

assault, a five-level increase applied under U.S.S.G. § 2A2.2(b)(3)(B). There were other offense

level enhancements deemed applicable in the initial PSR.  The initial PSR also contained a

Chapter 4 enhancement under § 4B1.1 because His Law was deemed a career offender, thus

increasing the offense level further. The initial PSR contemplated acceptance of responsibility

credit, but noted behavior by His Law that might justify withholding the acceptance of

responsibility discount in the offense level calculation.

As far as his criminal history category, His Law received three criminal history category

points for a third degree burglary conviction from Davison County, South Dakota in 2003, and

6

an additional three points for a first degree robbery conviction in Davison County, South Dakota in 2006. There was other criminal conduct in which His Law had engaged that did not result in assignment of criminal history points. Although His Law's total criminal history score was six, the initial PSR deemed His Law a career offender based on the two prior convictions for crimes of violence under U.S.S.G. § 4B1.1(b). Other information in the PSR reflected poorly on His Law and his past conduct.

Through a letter dated June 14, 2012, Siebrasse on behalf of His Law objected to multiple paragraphs of the PSR. Those objections fit into six categories: 1) objections to the victim's characterization of the assault and the characterization of His Law's conduct in connection with the assault and its aftermath; 2) an objection to an enhancement for obstructing or impeding justice based on His Law's alleged intimidation of the victim and other criminal conduct as had been charged in the indictment; 3) an objection to a notation in the PSR that His Law's conduct put in jeopardy acceptance of responsibility credits; 4) an objection to information that the victim had been restrained as a part of the assault; 5) an objection to categorization of His Law as a "career offender" both for the offense level calculation and his criminal history category; and 6) an objection to certain information about His Law's criminal conduct when he was a young man or juvenile. Based on these arguments, Siebrasse objected to the guideline range calculation in the initial PSR.

This Court convened a sentencing hearing on July 18, 2012. CR Doc. 55. The Government called as a witness Tino Lopez, a special agent with the Bureau of Indian Affairs who was the case agent involved in the investigation of His Law's assault of Ortiz. CR Doc. 55

7

at 6. Siebrasse objected to Agent Lopez's testimony concerning information from the victim, which objection prompted the Court to note:

> It is indeed hearsay, but the Court is conducting a sentencing hearing.[4] The Court recognizes that hearsay is entitled to limited and sometimes no weight whatsoever. The Court will allow the agent to testify as it might be preliminary to some later questions.

CR Doc. 55 at 7-8. Siebrasse restated hearsay objections as the testimony proceeded. CR Doc. 55 at 9, 16, 17. Agent Lopez then testified to information obtained from the victim and from his investigation. Through Agent Lopez, certain exhibits were introduced, including evidence and photographs from the area where His Law had assaulted the victim. The assault was bloody, and samples taken from the blood came back as belonging to Ortiz. CR Doc. 55 at 39; Sentencing Exhibits A-G. On cross-examination, Siebrasse established that the victim had delayed in reporting the event and that much of what Agent Lopez relied upon came from the victim. CR Doc. 55 at 17-37. During cross-examination, Siebrasse challenged the victim's credibility and sought to mitigate the assault. CR Doc. 55 at 31-37.

Siebrasse at the sentencing hearing called as a witness Marion His Law, the father of His Law. CR Doc. 55 at 45. Marion His Law's testimony was designed to undermine the account of the assault by the victim. CR Doc. 55 at 45-50. On cross-examination, Marion His Law acknowledged that he had refused to be interviewed by law enforcement about the event and did not personally witness the assault. CR Doc. 55 at 50-54. Siebrasse then called to the stand Twila

---

[4]Under Rule 1101(d) of the Federal Rules of Evidence, the rules, except those concerning privileges, "do not apply to the following: . . . (3) miscellaneous proceedings such as: . . . sentencing[.]" Even though the hearsay rules within the Federal Rules of Evidence do not apply in a sentencing hearing, this Court hews close to the Federal Rules of Evidence in sentencing hearings and tends to be disinclined to make rulings based solely on hearsay.

His Law, the sister of His Law. CR Doc. 55 at 54-55. Siebrasse's examination of Twila His Law cast doubt on the credibility of the victim and the allegation that His Law had been intimidating the victim following the assault. CR Doc. 55 at 55-62. Siebrasse next called as a witness Edwin Assman, a private investigator hired by Siebrasse on the case. CR Doc. 55 at 66. Assman testified that his investigation revealed no evidence of His Law's use of his shod foot in assaulting the victim as the victim had claimed. Assman's investigation suggested that the victim had voluntarily been with His Law after His Law had assaulted her, rather than being involuntarily taken by His Law to be intimidated. CR Doc. 55 at 66-79.

After receiving evidence at the sentencing hearing, this Court ruled on the objections that Siebrasse had made for His Law. This Court granted in part the first objection to certain information from the victim and revised the PSR accordingly. CR Doc. 55 at 81. This Court denied the objection about certain criminal information that did not affect His Law's criminal history classification. CR Doc. 55 at 86-87. This Court granted His Law's objection to the enhancement to the offense level for the use of a dangerous weapon being shod feet, based on the Government not having come forward with evidence sufficient for the Court to find by a preponderance of the evidence that His Law had stomped or kicked the victim during the assault. CR Doc. 55 at 88-90. This Court also granted His Law's objection to the obstruction of justice enhancement. CR Doc. 55 at 91-93.

Because of the Court's receipt of information just prior to the sentencing hearing concerning His Law's misbehavior while in custody, the Court then asked for testimony from Steve Houghtaling, the then-acting supervisor of the United States Marshal Service in Pierre, South Dakota. CR Doc. 55 at 93. The United States Marshal Service had provided information

9

to the Court just prior to the sentencing hearing about His Law's misconduct while in custody, which the Court in turn wanted to be made known to His Law and counsel. CR Doc. 55 at 93-95. His Law had been both disrespectful to prison staff during his time in the custody of the United States Marshal Service and had struck another inmate so hard that His Law broke his hand. CR Doc. 55 at 105-106.

This Court then discussed the enhancement under U.S.S.G. § 3A1.3 of two levels for physical restraint of the victim during the assault. Counsel debated whether the victim had been restrained in a closet while His Law was pummeling her. Concluding that there was not testimony about restraint in the closet from the victim, this Court again ruled in His Law's favor at that time on the restraint of the victim enhancement. CR Doc. 55 at 97-99.

This Court then considered whether His Law was a career offender under § 4B1.1. Siebrasse argued that His Law was not a career offender. CR Doc. 55 at 100-102. Siebrasse also addressed the issue of whether acceptance of responsibility credit should be revoked from His Law because of his violent and disrespectful behavior while in the custody of the United States Marshal Service. CR Doc. 55 at 104-105.

After hearing argument on whether His Law was a career offender based on the third degree burglary conviction and the robbery conviction in state court, this Court recessed to obtain the case of <u>Taylor v. United States</u>, 495 U.S. 575 (1990), on which counsel was basing the argument. After quickly reading the <u>Taylor</u> decision, this Court concluded that the two previous convictions were of a nature to support the determination that His Law was a career offender under the sentencing guidelines, and thus overruled Siebrasse's objections in that regard. CR Doc. 55 at 106-107.

10

This Court then entertained argument from counsel on what the appropriate sentence should be. The Government, bound under the Plea Agreement to request a sentence within the guideline range, noted that the guideline range under the Court's calculation at that time was 100 to 120 months and thus asked for a sentence "close to the statutory maximum if not the statutory maximum of 120 months[.]" CR Doc. 55 at 109-110. Siebrasse, on behalf of His Law, argued for a bottom end of the guideline range of 100 months. CR Doc. 55 at 111-112. His Law then addressed the Court. CR Doc. 55 at 113.

This Court then explained its reasoning and in the process expressed difficulty giving His Law acceptance of responsibility credit based on his conduct while in the custody of the United States Marshal Service. CR Doc. 55 at 113-114. This Court thus calculated the guideline range under the version of the guideline manual applicable to the crime at 100 to 120 months based on His Law being in offense level 24 after giving him acceptance of responsibility credit and in criminal history category VI. This Court began its consideration of the other 18 U.S.C. § 3553(a) standards as follows:

> The Court considers the nature and circumstances of the offense. On November 3, 2011, Mr. His Law assaulted Evon Ortiz in the home in which they were residing at the time. He was angry at her for whatever reason, maybe a shoving match, maybe a threat that she was going to kick in a TV, maybe something else, but he dragged her by her hair, by his own admission, into a bedroom where he began punching her in the face with a closed fist, punched her multiple times. She fell, went down to the ground near a closet and perhaps into a closet and Mr. His Law continued the assault there.
> Ms. Ortiz was left with two black eyes, a nasal bone fracture, bruising and swelling.

CR Doc. 55 at 114-115.

The Court then considered the personal history of His Law as follows:

11

The Court considers the history of Mr. His Law. He's already getting hit hard enough for the past criminal conduct so the Court will gloss by that.

Mr. His Law was raised by parents who did work. It seemed like it would be a pretty decent upbringing in the Fort Thompson area. He, however, struggled through his teen years, alcohol use occurred as early as age 12 and became problematic in his life. Daily marijuana use also occurred during his teen years.

He has a limited employment history in part because he spent some of his life in jail . . . . [H]e has a family that supports him and it appears from the history that the Court has reviewed, that he has issues with anger management and substance abuse.

One of the things that did strike the Court is that while in state custody, Mr. His Law had 163 violations of rules in state custody, 73 of which were major rule violations. And again, he's done poorly while in the custody of the United States Marshal.

CR Doc. 55 at 115-116.

This Court also considered the need for the sentence to reflect punishment, protection of the public, and deterrence. CR Doc. 55 at 116. This Court noted that "in thinking about this case that even if he were not a career offender, the Court probably would end up at the same place by way of upward variance." CR Doc. 55 at 116. The Court then determined that the length of the sentence should be 100 months, as the length that was sufficient, but not more than necessary, considering all of the factors under § 3553(a). CR Doc. 55 at 116. This Court imposed three years of supervised release, restitution, and a special assessment. CR Doc. 55 at 117-120. This Court advised His Law of his appeal rights, and of the effect of the waiver provision in Paragraph Q. CR Doc. 55 at 121.

## C.    Continuation of Sentencing Hearing

This Court following the July 18, 2012 sentencing hearing contacted counsel about its hesitation in signing a judgment and its desire to continue the sentencing hearing because of

certain issues. The continuation of His Law's sentencing hearing took place on August 15, 2012.

CR Doc. 53. This Court began the hearing by describing why a second phase of the sentencing

hearing was occurring:

> THE COURT: The Court believes it makes sense for the Court to put on the record what transpired after the sentencing hearing that was held on July 16, 2012, in Mr. His Law's Case.
>
> The Court occasionally has second thoughts about a sentencing decision. And in the days following Mr. His Law's sentencing hearing, pondered whether Mr. Siebrasse's argument about whether Mr. His Law was a career offender was correct.
>
> The Court, during Mr. His Law's sentencing hearing, received on the bench and reviewed the United States Supreme Court case of United States versus Taylor, which is a complicated case. And the Court thought it got its ruling right in deciding that Mr. His Law was indeed a career offender but wanted to look at the issue a bit more. So the Court hesitated and did not sign a judgment.
>
> As the Court was looking at that issue in greater depth, probation and pretrial services notified the Court that the Court's rulings in favor of Mr. His Law during the course of the sentencing hearing resulted in an offense level calculation that was lower than what was in the Presentence Investigation Report[,] than what was believed by the Court and th[a]n what was believed by counsel.
>
> So for those reasons, and with that having occurred, the Court contacted counsel for the parties about the Court's desire to have a second sentencing hearing -- a continuation of the sentencing hearing to address and sort out these issues.
>
> The Court also wanted to think a bit more about whether Mr. His Law was entitled to acceptance of responsibility credit in the wake of his conduct while in prison. On that issue, the Court had received -- very shortly before the sentencing hearing -- information that Mr. His Law had been involved in more than one physical altercation while in prison, and the Court somewhat sprung that on counsel either at the sentencing hearing or very shortly before the sentencing hearing.
>
> The Court did not ultimately revoke acceptance of responsibility credit, but it was one of those issues that came up very close in time to the sentencing hearing. So that was another reason why the Court felt that it was best in the interests of justice

to have a second sentencing hearing so that the Court could be assured that it was getting everything right.

Now, since that time and indeed around the time the Court contacted counsel, the Court did have an opportunity to review <u>Taylor versus United States</u>, the 1990 Supreme Court case . . . and the Eighth Circuit authority that has followed it, including <u>United States versus Bockes</u>, B-O-C-K-E-S, an Eighth Circuit case from 2006; and <u>United States versus Forrest</u>, an Eighth Circuit case from 2010; as well as <u>United States versus Sawyer</u>, an Eighth Circuit case from 2009.

The Court's conclusion is that the robbery conviction is, in fact, a crime of violence.

The <u>Bockes</u>, <u>Forrest</u>, and <u>Sawyer</u> cases guide the Court in understanding the analysis in the United States Supreme Court case of <u>Taylor</u>. The definition of "robbery" in South Dakota includes intentional taking of personal property regardless of value, quote, "accomplished by means of force or fear of force." End quote.

As far as the burglary conviction, there is a case from the Eighth Circuit that arose out of South Dakota and looked at the burglary conviction. That case is <u>United States versus Stymiest</u>, S-T-Y-M-I-E-S-T, which is an Eighth Circuit case. And that case seems to be squarely on point to establish that the third-degree burglary offense committed by Mr. His Law was indeed a crime of violence.

So the Court takes the bench at this hearing with greater confidence that its ruling about Mr. His Law being a career offender is correct.

As the Court has notified counsel, however, the offense level calculation for Mr. His Law was inflated at the time the Court made its decision as to sentencing.

CR Doc. 53 at 3-6.

The Government at the second sentencing hearing raised the issue of the Court's ruling on the "restraint of victim" enhancement and the acceptance of responsibility credit issue in light of His Law's behavior in the custody of the United States Marshal. CR Doc. 53 at 7-8. Siebrasse objected on behalf of His Law to those matters. CR Doc. 53 at 8-9. The Court did not revoke acceptance of responsibility credit, but reconsidered the victim related adjustment under U.S.S.G.

§ 3A1.3 for physical restraint. The Government cited the case of <u>United States v. Brings Plenty</u>, 335 F.3d 732 (8th Cir. 2003), which supported a two-point enhancement for restraint of victim when the victim was drug by her ankle from one room to another. CR Doc. 53 at 12-13. Siebrasse on behalf of His Law argued against the enhancement. CR Doc. 53 at 14. The Court reviewed <u>Brings Plenty</u>, expressed reluctance to rule differently than it had on the restraint of victim enhancement, but noted that <u>Brings Plenty</u> stood for the proposition that a victim grabbed by her ankle and pulled off a bed into a different room was conduct sufficient to support the enhancement. In the Factual Basis Statement acknowledged by His Law to be accurate at his change of plea hearing, His Law had admitted that he "grabbed [the victim] by the hair and dragged her into the southwest bedroom of the home" where he then beat her with his fists. CR Doc. 28; CR Doc. 53 at 14-15. Because drawing directly from the Factual Basis Statement did not require the Court to rely on Ortiz's credibility or hearsay statements Ortiz had made to Agent Tino Lopez and because of the parallel to the facts in <u>Brings Plenty</u>, this Court concluded that the two-level enhancement ought to apply. CR Doc. 53 at 16-17. The two-level enhancement did not effect the guideline calculation ultimately. If His Law were not a career offender and even with the two-level enhancement, His Law would have been at total offense level 21. Being a career offender, His Law's total offense level was 24.

The Amended PSR, based on the previous rulings of the Court, calculated a guideline range of 77 to 96 months, rather than what the Court and all counsel had believed to be a guideline range of 100 to 120 months. CR Doc. 53 at 17. This Court again heard argument from counsel with Government's counsel requesting a sentence at the top end of the guideline range of 96 months and Siebrasse requesting a sentence at the bottom end of the range of 77 months.

CR Doc. 53 at 18-20. This Court again allowed His Law an opportunity to address the Court,

and then explained its reasoning on a somewhat more abbreviated basis as to what the sentence

ought to be. CR Doc. 53 at 20-24. This Court stated:

> The sentencing guidelines are advisory in nature, but they are one of the factors that Congress directs the Court to consider. So the Court wanted to have this second hearing with it understood that the guideline range is actually 77 to 96 months in length.

CR Doc. 53 at 21. After discussing the § 3553(a) factors as applied to His Law and his case, this

Court then reasoned:

> When the Court held the sentencing hearing in mid-July, the Court made the observation that, even setting aside the guidelines, the § 3553(a) factors would drive the Court towards a sentence of 100 months. At that time the Court was thinking the range was 100 to 120 months and felt a sentence towards the bottom end of that range as appropriate. Now, knowing the range actually be 77 to 96 months, the Court's instinct is to sentence towards the top end of that range.

CR Doc. 53 at 23. The Court then imposed on His Law a sentence of 96 months in the custody

of the Bureau of Prisons with supervised release and other terms. CR Doc. 53 at 25-28. The

Court thereafter gave His Law information on his appeal rights. CR Doc. 53 at 28-29. The

Court signed the Judgment in a Criminal Case on August 15, 2012. CR Doc. 47.

His Law filed a Notice of Appeal of the Judgment and Commitment. CR Doc. 49. The

United States Court of Appeals for the Eighth Circuit entered judgment against His Law on his

appeal stating:

> The Government has moved to dismiss this appeal on the ground defendant executed a valid and enforceable waiver of his right of appeal as part of the plea agreement in the matter.

The court has carefully reviewed the motion and defendant's response, and the government's motion is granted. The appeal is hereby dismissed.

CR Doc. 65.

## II.     Discussion of His Law's § 2255 Motion

Under Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." See also LaRoche v. United States, Civ. No. 13-CV-3019-RAL, 2014 WL 1218906, at *2 (Mar. 24, 2014). Here, the record of the change of plea hearing and sentencing hearings are plain, the effective assistance of His Law's counsel is apparent from the transcripts, and His Law is not entitled to relief.

### A.     Ground One

His Law's first argument for § 2255 relief is "government breached plea agreement" by not standing by "its promise to recommend a 'within' guideline sentence." CIV Doc. 1 at 2, 4. The Plea Agreement into which His Law entered with the Government committed the Government to recommend a sentence "within the applicable Guideline range." CR Doc. 26 at ¶ G. At the first sentencing hearing, the Government attorney suggested a sentence toward the top of what then was understood as the applicable guideline range. CR Doc. 55 at 109-110. At the second sentencing hearing, the Government attorney recommended a sentence of 96 months, which was the top of the guideline range of 77 to 96 months. CR Doc. 53 at 19.

His Law mistakenly believes that a sentence at the top of the guideline range is not "within the guideline range." The Eighth Circuit has made clear that a sentence at the top of the

17

guideline range is considered "within" the guideline range. <u>United States v. Woodrum</u>, 959 F.2d 100 (8th Cir. 1992) (per curiam). In <u>Woodrum</u>, the defendant argued that his sentence was excessive because it was at the top of a guideline range of 21 to 27 months. That is, Woodrum's applicable guideline range was 21 to 27 months, and he received a sentence of 27 months. <u>Id.</u> at 101. The Eighth Circuit determined that "Woodrum's sentence was imposed within the applicable Guideline range," even though the sentence was at the top of the range. <u>Id.</u> Thus, the Government did not violate its Plea Agreement with His Law by recommending a sentence of 96 months, the top of the guideline range. <u>Id.</u>; <u>see also</u> <u>United States v. Kirschner</u>, 443 F. App'x 480, 481 (11th Cir. 2011) (per curiam) (finding that government did not violate agreement to recommend a within-guideline sentence by arguing for a sentence a the top end of the guidelines). The 96 months that His Law received as a sentence is "within" the applicable guideline range of 77 to 96 months.

**B.     Ground Two**

The second ground that His Law cites for relief is that Siebrasse did not render effective assistance of counsel at the sentencing or appeal stages. CIV Doc. 1 at 5. Although the § 2255 motion mentions as well "pre-plea stages," His Law twice told the Court under oath at his change of plea hearing that he was satisfied with the counsel, advice, and representation provided by Siebrasse. CR Doc. 57 at 4, 15. Further, His Law's memorandum submitted with his § 2255 motion expresses dissatisfaction with Siebrasse only concerning Siebrasse's performance at the sentencing proceeding and on appeal. CIV Doc. 2.

Under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), His Law must meet a two-prong test to prevail on a claim of ineffective assistance of counsel. Under the first prong, His Law

18

must demonstrate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  To make such a showing, His Law must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted).  "Judicial scrutiny of counsel's performance must be highly deferential." Id.  "When reviewing counsel's performance, a court must avoid using the 'distorting effects of hindsight' and must evaluate the reasonableness of counsel's conduct 'from counsel's perspective at the time.'" United States v. Carter, 629 F. Supp. 2d 934, 940 (D.S.D. 2009) (quoting Strickland, 466 U.S. at 689).

Under the second prong of Strickland, His Law must demonstrate prejudice from counsel's error. Strickland, 466 U.S. at 687.  "To establish prejudice, [His Law] must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Wong v. Belmontes, 558 U.S. 15, 19-20 (2009) (per curiam) (quoting Strickland, 466 U.S. at 694).  Thus, His Law faces what the Supreme Court has characterized as a "highly demanding" standard under Strickland. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).  His Law has not met that standard.

Siebrasse's performance during the sentencing process is a matter of record before this Court. Siebrasse timely filed a number of objections to the PSR. Siebrasse effectively cross-examined the witness that the Government called at the sentencing hearing and presented three witnesses on behalf of His Law. Siebrasse's performance at the first sentencing hearing prompted this Court to rule in favor of His Law on nearly every material issue, except for the

19

career offender issue. It is true that at the end of the first sentencing hearing, this Court mistakenly believed the guideline range to be 100 to 120 months, and Siebrasse did not catch that error at the hearing, nor did the Court, the Government, or the probation and pretrial services officer present at the sentencing hearing.

This Court's initial misunderstanding of the guideline range of 100 to 120 months, and Siebrasse's failure to notice the error, clearly was harmless. This Court opted not to sign a judgment and scheduled a second sentencing hearing where the proper guideline range of 77 to 96 months was used. Siebrasse effectively represented His Law at the second phase of the sentencing. For reasons based on the sentencing guidelines and § 3553(a) factors, the Court sentenced His Law to 96 months, the top end of the proper guideline range.

There was nothing in Siebrasse's performance that would be "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Moreover, there was no prejudice in that, as described by the Court, the § 3553(a) factors drove the Court to 100 months at the first sentencing hearing and, giving His Law a break by four months, to the top end of the guideline range of 96 months at the second hearing.

C.    Ground Three

Section 2255 provides that a federal prisoner may challenge his sentence on the grounds that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such a sentence[;] or (3) "that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." His Law's third ground for relief under § 2255 does not allege jurisdictional or

20

constitutional error. Rather, His Law argues that the Court inappropriately applied the law, particularly with respect to the career offender calculation and the enhancement under Brings Plenty. CIV Doc. 1 at 7. This type of collateral attack on a sentence is "severely limited; 'an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.'" Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).

The miscarriage-of-justice exception is inapplicable in this case. In Sun Bear, the Eighth Circuit held that § 2255 provided no relief to a federal prisoner sentenced below the statutory maximum even though the prisoner had been sentenced as a career offender under U.S.S.G. § 4B1.1 based upon a predicate offense that was later determined not to be a crime of violence. Id. at 704-06. The Eighth Circuit "characterized this error as an 'ordinary' Sentencing Guidelines question rather than a cognizable error of law or an error that fits within any miscarriage-of-justice exception for § 2255 relief." Brydon v. United States, 494 F. App'x 684, 685 (8th Cir. 2012) (per curiam) (citing Sun Bear, 644 F.3d at 704). Because this Court sentenced His Law well below the statutory maximum, there was no miscarriage of justice and the "ordinary" issues of guideline interpretation raised in His Law's third ground for relief are not cognizable under § 2255.[5]

---

[5]Although the record is somewhat unclear concerning what issues His Law raised on direct appeal, there are other reasons that His Law is not entitled to relief on his sentencing arguments. First, to the extent that His Law failed to raise his sentencing arguments on direct appeal, he has not demonstrated cause and prejudice to excuse this failure. Accordingly, he is procedurally barred from raising these arguments now. See Meeks v. United States, 742 F.3d 841, 844 (8th Cir. 2014) ("A § 2255 petition is not a second direct appeal and issues raised for the first time in a § 2255 petition are procedurally defaulted."); see also Barron v. United States, Nos. 7:13-CV-90171 (HL), 7:10-CR-

21

Even if His Law's third ground for relief were cognizable under § 2255, there was no error in how the guidelines ultimately were calculated for His Law. The two-level enhancement under <u>Brings Plenty</u>, 335 F.3d 732, for restraint of the victim applies. His Law, by his own admission in the Factual Basis Statement, grabbed the victim by the hair and dragged her from one room into the bedroom where he then began hitting her repeatedly in the face and upper body with his fists. In <u>Brings Plenty</u>, the Eighth Circuit affirmed the two-level enhancement where the victim was dragged from one room to the next by her ankle. <u>Id.</u> at 735-36. There is no reason to distinguish <u>Brings Plenty</u> from this instance, where the difference is that His Law chose to drag the victim by her hair rather than by her ankle, from one room to the next before beating her with his fists. <u>Brings Plenty</u> supports the application of the two-level enhancement to His Law's offense.

As for the career offender enhancement under U.S.S.G. § 4B1.1, this Court relied on <u>Taylor</u>, 495 U.S. 575. The Supreme Court in <u>Taylor</u> made clear that courts should take a "categorical approach" when determining whether a defendant has committed a violent felony as defined in 18 U.S.C. § 924(e). <u>Id.</u> at 601-02. That is, courts should look to the statutory definition of the offense rather than the facts underlying the defendant's prior conviction. <u>Id.</u> at 602. When a prior conviction is for violating a "divisible" statute, however, courts may apply

---

24 (HL), 2014 WL 1255206, at *1 (M.D. Ga. Mar. 26, 2014) ("The fact that Petitioner failed to appeal on these issues because he waived his right to appeal in his plea agreement does not constitute a sufficient cause to suspend the procedural default rule."). Second, to the extent that His Law raised his sentencing arguments on appeal, the Eighth Circuit decided adversely to His Law on these issues by concluding that he had executed a valid waiver of his appellate rights and thus could not challenge his sentence on the aforementioned grounds. Accordingly, he may not relitigate these issues now. <u>See</u> <u>Bear Stops v. United States</u>, 339 F.3d 777, 780 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.") (citation omitted).

22

the "modified categorical approach." <u>Descamps v. United States</u>, 133 S. Ct. 2276, 2281 (2013). A statute is divisible when it sets out one or more of the elements of the offense in the alternative. <u>Id.</u> If one alternative constitutes a violent felony, but another does not, courts may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." <u>Id.</u> Although <u>Taylor</u> and <u>Descamps</u> concerned § 924(e), the Eighth Circuit has applied the same approach when determining whether a prior conviction was a "crime of violence" under U.S.S.G. § 4B1.1. <u>United States v. Vinton</u>, 631 F.3d 476, 484 (8th Cir. 2011). The Eighth Circuit reasoned that because the definition of "crime of violence" in § 4B1.2 is very similar to the definition of "violent felony" in § 924(e), cases interpreting § 924(e) "can be instructive" with respect to § 4B1.2. <u>Vinton</u>, 631 F.3d at 484; <u>see also</u> <u>United States v. Williams</u>, 690 F.3d 1056, 1067 (8th Cir. 2012) ("The definition of 'crime of violence' contemplated by § 4B1.2(a) is nearly identical to that of 'violent felony,' as contemplated by 18 U.S.C. § 924(e)(2)(B) . . . and we treat the two as interchangeable.").

Under the guideline manual, a "crime of violence" means

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(1)-(2). The guidelines specifically list robbery as an included offense. <u>Id.</u> § 4B1.2 cmt. n.1. The South Dakota robbery statute under which His Law was convicted, S.D.C.L. § 22-30-1, fits within § 4B1.2(a)(1):

23

> Robbery is the intentional taking of personal property, regardless of value, in the possession of another from the other's person or immediate presence, and against the other's will, <u>accomplished by means of force or fear of force</u>, unless the property is taken pursuant to law or process of law.

S.D.C.L. § 22-30-1 (emphasis added). The Eighth Circuit has found similar robbery statutes to qualify as a violent felony under § 924(e), <u>United States v. Forrest</u>, 611 F.3d 908, 911 (8th Cir. 2010), and a crime of violence under § 4B1.1, <u>United States v. Sawyer</u>, 588 F.3d 548, 555-56 (8th Cir. 2009).

The second offense of violence supporting adjudging His Law to be a career offender was a third degree burglary conviction in 2002. At that time, S.D.C.L. § 22-32-8 provided: "Any person who enters an unoccupied structure, with intent to commit any crime other than the act of shoplifting or retail theft . . . or remains in an unoccupied structure after forming the intent to commit any crime other than shoplifting . . . is guilty of third degree burglary." His Law's argument concerning his third-degree burglary conviction appears to be that the Government had a burden to produce certain documents related to this conviction before this Court could find that the conviction constituted a crime of violence. The Eighth Circuit's decision in <u>United States v. Stymiest</u>, 581 F.3d 759 (8th Cir. 2009), forecloses this argument. In <u>Stymiest</u>, the Eighth Circuit considered whether a conviction under § 22-32-8 constituted a crime of violence as defined in U.S.S.G. § 4B1.2(a). Concerned that § 22-32-8 was "over-inclusive because it defines 'structure' to include motor vehicles, watercraft, aircraft, railroad cars, trailers, and tents[,]" the Eighth Circuit looked to a statement in the defendant's PSR, to which the defendant did not object, that established that the defendant had burgled a building. <u>Id.</u> at 768. Although the defendant had made a general objection to the PSR classifying him as a career offender, this was

24

insufficient to "trigger the government's obligation to introduce court documents confirming the PSR's fact statement that he burgled a building." Id. So too here. Although His Law objected to the PSR classifying him as a career offender, he did not object to paragraph thirty-five of his PSR, which recounted the facts underlying his third degree burglary conviction. Accordingly, the Government was not required to introduce evidence confirming paragraph thirty-five. Id.; see also United States v. Reliford, 471 F.3d 913, 916 (8th Cir. 2006) ("[I]f the defendant fails to object to fact statements in the presentence report (PSR) establishing that a prior offense was a violent felony conviction, the government need not introduce at sentencing the documentary evidence that Taylor and Sheppard otherwise require.").

To the extent His Law argues that his conviction for third degree burglary does not fall within § 4B1.2(a)'s definition of "crime of violence," he is incorrect. In Stymiest, the Eighth Circuit applied the modified categorical approach to the defendant's conviction under § 22-32-8 to determine whether the conviction constituted a "generic burglary," which the Eighth Circuit defined as "unlawful or unprivileged entry into, or remaining in, *a building or structure*, with the intent to commit a crime." Id. at 767 (emphasis in original) (quoting Taylor, 495 U.S. at 598-99). Because the defendant's PSR established that the defendant had burgled a building—rather than one of the other "structures" listed in § 22-32-8—the Eighth Circuit determined that the defendant's third degree burglary conviction was a "generic burglary" and therefore constituted a crime of violence under Eighth Circuit precedent. Id. at 768-69. Here, paragraph thirty-five of His Law's PSR states that His Law entered a "trailer house" without permission and violently assaulted a person therein. The modified categorical approach permitted this Court at sentencing to consider that His Law had burgled a trailer house when determining whether His Law's

25

conviction for third degree burglary constituted a generic burglary. This approach establishes that His Law was, in fact, convicted of generic burglary rather than some form of non-generic burglary under § 22-32-8. Thus, there was no error in ruling His Law to be a career offender for purposes of the sentencing guideline calculation.

IV.     **Conclusion**

For the reasons contained herein, it is hereby

ORDERED that His Law's motion to vacate, set aside, or correct sentence by a person in federal custody, CIV Doc. 1, is denied. It is further

ORDERED that the Clerk of Court provide a copy of this Opinion and Order to His Law. It is further

ORDERED that no certificate of appealability under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts will issue. It is finally

ORDERED, ADJUDGED AND DECREED that judgment of dismissal in favor of the Government and against His Law under Rules 54 and 58 of the Federal Rules of Civil Procedure hereby enters.

Dated April 28th, 2014.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

26